J. KENNETH HUFF JR.

CERTIFIED PUBLIC ACCOUNTANT
ACCREDITED IN BUSINESS VALUATION
CERTIFIED IN FINANCIAL FORENSICS
PRIVATE INVESTIGATOR, LICENSE A09667

**KEN HUFF, P.C.**
*A PROFESSIONAL CORPORATION*
P.O. BOX 685257
AUSTIN, TEXAS 78768-5257
512-633-6542

ken@kenhuffpc.com

August 22, 2014

Mr. Brian Zimmerman
Zimmerman, Axelrad, Meyer, Stern & Wise, P.C.
3040 Post Oak Boulevard, Suite 1300
Houston, Texas 77056

Re: Front-Shell Company Report
Civil Action No. A-10-CA-076-SS in the United States District Court,
Western District of Texas, Austin Division.

Dear Mr. Zimmerman,

At your request, I have studied numerous documents relating to J & T Development Group, LP ("J & T") to determine if the company acted as a front or shell company. In my opinion, the only purpose for J & T was to be a shell or front company for real estate flipping transactions. My opinion is based on my experience as a Special Agent, Internal Revenue Service, Criminal Investigation; Supervising Examiner (Investigator) for the Texas State Securities Board-Enforcement Division; and currently; Licensed Private Investigator, Texas Department of Public Safety-Private Security Bureau; Certified Public Account/Accredited in Business Valuation and Certified in Financial Forensics. In addition, the facts upon which I based my opinions are of a type reasonably relied upon by experts in my field.

Black's Law Dictionary defines a Shell Company as "a firm that does not trade, formed to raise funds, attempt to take over, go public or as the front for an illegal venture". A Front Company is defined as "term used for an entity, be it an individual or group or organization used to inhibit the identification of an owner". In real estate fraud schemes, front companies are referred to as "straw-buyers" and/or "straw borrowers". A "straw-buyer" in a real estate transaction is a person, group of people or an entity, who purportedly are controlling the operation of a company when in fact other unknown or undisclosed persons are actually controlling the company and the real estate purchase or sale.

An undisclosed or hidden owner is a material fact which may very well affect the investment decision of an investor or lender. J & T acted as both a front company used to inhibit the identification of an owner and a shell company which raised funds from investors and lending institutions and the front for real estate transactions consisting of flipping land. Utilization of a front or shell company in a real estate transaction misleads the investors by concealing the identification of the true owners of the company.

In my opinion J & T acted as a front and shell company. My opinion is based on the following:

J & T was formed at the direction of Boris Serebro on or about April 24, 2006 (Office of the Secretary of State for the State of Texas Certificate of Filing for J & T Development Group, L.P.). The members were Gennady Borokhovich, Vitaly Zaretsky and Jeff Turner. It is alleged Victor Wolf actually controlled J & T and he was not disclosed. (J & T Partnership Agreement and Hemphill chart bates number 003878 through 003881)

The Wildhorse land transactions follow a pattern of land schemes in Florida which were operated by Victor Wolf who is currently on the Federal Bureau of Investigation's Most Wanted list. A portion of the description of their crimes stated "Victor Wolf and his wife, Natalia Wolf, are wanted for their alleged involvement in a massive real estate-related fraud scheme. From approximately 2004 through 2006, the Wolfs established approximately two dozen Florida Corporation, one of which was Sky Development Group, to conduct the fraudulent investment scheme"(www.fbi.gov/wanted/wcc). In 2006 the scheme relocates from Florida to Texas with the August 26, 2006 purchase of 367 acres of land known as Wildhorse Ranch. Victor Wolf, Sam Zeltszer and Zelig Zeltszer could not be disclosed since they could easily be connected to the Florida real estate scheme. In addition, Aron Grinshpun could not be disclosed as part of the Wildhorse transactions due to his co-venture interest with Sam Zeltser and Zelig Zeltser. The affidavit of Judy Utter included an Indemnification Agreement which stated "Whereas, Aron Grinshpun, Sam Zeltser and Zelig Zeltser are co-venturers, directly or indirectly through ownership interest in one or more juridical entities themselves having direct or indirect ownership interest therein, in a real estate project (the"Project") in or about Travis County, Texas comprised of approximately 1665 acres, such real estate project implemented in the form of and by means of various juridical entities, including without limitation (i) J&T Development, LP, a Texas limited partnership and (ii) J-Tail LLC, a Teas limited liability company". (Affidavit of Business Records Custodian Judy Utter). (The Hemphill chart reflects the complexity of J & T's organizational structure (Hemphill – 003878 through 003881). In my opinion, the primary purpose of this complex a structure was to conceal the identity of the individuals connected to the Florida scheme.

J & T did not have any bank accounts which indicates J & T did not have any funds to deposit or pay business expenses supporting the allegation J & T only existed to participate in the real estate transactions to hide the actual participants.

J & T had not filed federal tax returns for the years in question, which supports the conclusion J & T did not operate as a legitimate operating business.

On February 1, 2007 J & T entered into a Deed of Trust and Security Agreement relating to a $4,000,000 Mortgage to Creative Financial Solutions as payment agent for the lenders who had invested with them. On November 28, 2006, two months prior to the above described loan J & T executed an Assumption and Special Warranty Deed conveying the same tract of land to J-Tail, LLC. Not only was title conveyed to J-Tail but also an

assumption by J-Tail of a Note payable to International Bank of Commerce in the original amount of $8,224,559 dated October 27, 2006.

The above described $4,000,000 loan was never funded in the total amount since the Simons Family Trust never funded their $1,100,000 portion of the loan. J & T did not disclose this material information to investors.

On November 21, 2006 J & T flipped the 414 acre tract to J-Tail and the settlement statement reflect J & T allegedly contributed $4,144,250.94 to the purchase price. I have not seen any evidence of J & T contributing any funds in that transaction.

A fax cover sheet sent from North American Title Company to Vitaly Zaretsky reflected at that time J-Tail LLC and not J & T owned the land which needed to be conveyed back to J & T. That 414 acre tract of land was not owned by J & T but was the primary collateral securing their mortgage.

In addition, Fort Worth National Bank loaned $2,000,000 and Creative Financial Services loaned $1,700,000 to J & T on November 2006 secured by the same Wildhorse 100 acre tract of land. The Fort Worth National Bank loan proceeds were transferred to GF file 066650378 where they became the equity which was pulled out when the 414 acres was flipped to J-Tail.

Bankruptcy Schedule B filled by J & T reflect the value of secured claims and debt in the amount of $9,925,000 Schedule B. The only asset was the Wildhorse 100 acre tract of land which had a fair market value of $2,041,000 on June 21, 2007 (Valuation by Paul Hornsby & Company dated June 24, 2013)

In addition, to the documents listed in the body of the report I also studied the following documents:

    Sky Group of Texas – Aubrey 8038
    Frontier Acquisitions – Aubrey 722
    Sky Group Website – Zaretsky Exh 04
    FBI Website – Victor Wolfe
    FBI Website – Natalia Wolf
    Sater Sentencing – Transcript
    Hemphill Organizational Chart
    J & T Limited Partnership Agmt Turner
    Zar Depo Pages 451-461
    Fidelity Title – Escrow Disbursement
    Serebro Deposition
    Turner Exhibits 78, 79, 81 and 82
    Report of Robert E. Philo
    Texas Sky Agreemet-ZAR 00931 through 00940

*J. Kenneth Huff CPA/ABV/CFF*